In re GAY et al.

(District Court. D. New Hampshire.    December 14, 1899.)

No. 78.

1. BANKRUPTCY—PARTNERSHIP PETITION.
    · .Where a petition in voluntary bankruptcy is presented both in the name
    of a partnership and in the names of the individual partners, and is ac-
    companied by schedules setting forth the debts and assets of the firm and
    also of the partners, and thereupon the petitioners are adjudged bankrupt
    as prayed, it is not necessary that each partner should also file an indi-
    vidual petition, in order to be relieved from his individual debts, but the
    court of bankruptcy may administer upon the separate estates of the part-
    ners as well as upon the estate of the firm in a single proceeding, and
    may grant to the partners a discharge from both separate and joint debts,
    and apportion the costs equitably between the individual and the joint
    estates.

2. SAME—FILING FEE.
    A proceeding in .bankruptcy, upon a voluntary petition by a firm, in
    which the individual partners also join, is but a single proceeding, although
    each of the partners seek a discharge from all classes of debts; and only
    one deposit of the filing fee of $25 required by the act is necessary.

3. SAME—FORM OF DISCHARGE.
    A discharge in bankruptcy granted to a member of a firm in proceedings
    based on a voluntary petition in which both the firm and the individual
    partners joined, and on which the petitioners were adjudged bankrupt as
    prayed, should be made to cover his liability on the debts of the firm, and
    also his individual indebtedness.

In Bankruptcy.    On application for leave to amend a voluntary
petition in bankruptcy filed by a partnership, and on petition of the
partners for discharge. .

Edmund Sullivan, for the bankrupts.

ALDRICH, District Judge.    Gay Bros. is the partnership name,
and J. A. Gay and L. D. Gay were the two partners.    In the orig-
inal petition the firm and the individual partners all joined as peti-
tioners.    They used Form 2, setting out the partnership debts which
they were not able to pay, and stating that they were willing to
surrender all their property for the benefit of their creditors.    The
petition sets out, by schedule annexed, marked "A," and verified by
oath, a full and true statement of the debts of said partners, etc.;
by schedule marked "B," verified by oath, an accurate inventory
of the property of said partners; by schedule marked "C," a full
and true statement of the individual debts of Joseph O. Gay; by
Schedule D, an inventory of all his individual property, real and
personal; by Schedule E, the individual indebtedness of Louis P.
Gay; and by Schedule F, an inventory of his individual property.
The petition concludes with a prayer that the firm may be adjudged,
by a decree of the court, to be bankrupts (in the plural).    The adjudi-
cation indorsed by the judge on the back of the original papers was
"Petitioners adjudged bankrupts, and petition referred to Benjamin
H. Corning, Esq., referee."    The order of the clerk, which I suppose
was. for publication, was not so comprehensive as the indorsement
by the judge, for it states only that "the said Gay Bros. are adjudged

bankrupt." It appears, however, from subsequent proceedings in the case, that the referee notified the individual as well as the partnership creditors; so, if there was any defect in the language of the order promulgated by the clerk, it was cured by the notice of the referee and the appearance of the creditors.

Paragraph "c" of section 5 of the bankrupt law contemplates that the bankruptcy court which has jurisdiction of one of the partners may have jurisdiction of all the partners, and of the administration of the partnership and individual property. Paragraph "d" provides that the trustee shall keep separate accounts of partnership property and property belonging to the individual partners; and paragraph "e" that the expenses shall be paid from the partnership property and the individual property in such proportion as the court shall determine. So it would seem that in a proper case (and I mean by that upon sufficiently comprehensive papers, and conditions warranting it) the court may wind up the affairs and relieve from the indebtedness of the partnership and the individual partners in one proceeding, and apportion the expenses as equity may require. Furthermore, it may be said that congress, for the purpose of making the law a practical, working law, authorized and called upon the supreme court to promulgate necessary rules and forms to be used in its administration. Form 2 of the rules prescribed by the supreme court (18 Sup. Ct. xviii.) is entitled "Partnership Petition"; and I assume that it was intended to provide a form for putting the provisions of section 5 of the bankrupt law into practical operation, and that it was formulated in accordance with the view of the supreme court as to what section 5 contemplated should or might be done. That form, which was strictly followed by the petitioners in this case, clearly contemplates that not only the partnership assets may be inquired into, but that the assets and liabilities of the individual partners may be inquired into and wound up in one proceeding. Aside from what seems fairly to follow from the different paragraphs of section 5, and the form promulgated by the supreme court, it may be observed that the different results may be more easily, conveniently, and inexpensively reached in one proceeding, upon proper papers, than upon several separate and distinct proceedings, involving different hearings, and what might be called circuity of legal process.

There has been no consideration upon argument of this particular question in any of the districts of the First circuit, that I am aware of; but I do understand that the practice in the Massachusetts district, and in the Maine district as well, has been to discharge from both partnership and individual indebtedness in one proceeding upon one petition, where the firm and the individual partners become petitioners, and set out the various kinds of indebtedness, and the assets of the various interests, and ask to be adjudged bankrupts. I see no reason why this practice should not be adopted for New Hampshire; and it may be understood that it is the practice, until there is an authoritative and controlling decision to the contrary, or until I am convinced upon argument that this should not be so. While a single fee to the clerk, the referee, and the trustee may

be meager or entirely inadequate in such a comprehensive proceed-
ing, I am disposed to follow the decision of Judge Coxe in Re Lang-
slow, 1 Nat. Bankr. N. 232, 98 Fed. 869, and the practice in Massa-
chusetts and in Maine, until argument convinces me that I am wrong
in this respect.

As to the form of the discharge, in Massachusetts the practice is,
in such a case, to discharge each individual partner from all debts
and claims, making no distinct reference to their partnership or in-
dividual character,—the theory being that the discharge of the part-
ner from all debts and claims covers both; while in Maine, as I
understand it, the practice is to expressly discharge each individual
partner from firm indebtedness, and individual indebtedness as well.

In the view which I hold, the application for an amendment by
annexing to the original petition a separate individual petition for
each partner, in addition to the one in which they join as individuals,
is unnecessary, and therefore is disallowed. The petition for dis-
charge is granted, and a discharge should be issued to each indi-
vidual partner, and should cover his liability on the debts and claims
against Gay Bros., and his individual indebtedness as well.